**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF WASHINGTON**

Case No. 2:14-CV-00076-VEB

JAMES A. WINKEL,

                Plaintiff,

vs.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

               Defendant.

DECISION AND ORDER

# I. INTRODUCTION

In July of 2009, Plaintiff James A. Winkel applied for Disability Insurance Benefits ("DIB") and supplemental security income ("SSI") benefits under the Social Security Act. The Commissioner of Social Security denied the applications.

Plaintiff, represented by Dana Chris Madsen, Esq., commenced this action seeking judicial review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).  The parties consented to the jurisdiction of a United States Magistrate Judge. (Docket No. 6).

On October 30, 2014, the Honorable Rosanna Malouf Peterson, Chief United States District Judge, referred this case to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 14).

## II. BACKGROUND

The procedural history may be summarized as follows:

Plaintiff applied for DIB and SSI benefits on July 28, 2009, alleging disability beginning August 21, 2007. (T at 282-90, 291-93).[1]  The applications were denied initially and on reconsideration and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  On November 17, 2010, a hearing was held before ALJ Caroline Siderius. (T at 49).  Plaintiff appeared with an attorney and testified. (T at 58-78). The ALJ also received testimony from Dr. Kent Layton, a medical expert (T at 53-58), and Jenny Lawson, a vocational expert. (T at 78-89).

---

[1] Citations to ("T") refer to the administrative record at Docket No. 11.

DECISION AND ORDER – WINKEL v COLVIN 14-CV-00076-VEB

On January 10, 2011, ALJ Siderius issued a written decision denying the applications for benefits and finding that Plaintiff was not disabled within the meaning of the Social Security Act.  (T at 137-53).   The Social Security Appeals Council granted Plaintiff's request for review and issued a Remand Order on March 19, 2012.  (T at 154-59).  In sum, the Appeals Council directed further development of the record (including a consultative examination) regarding Plaintiff's mental health limitations. (T at 155-57).

An administrative hearing on remand was held before ALJ Siderius on August 23, 2012.  Plaintiff appeared with his attorney and offered additional testimony. (T at 111-22).  The ALJ also received testimony from Dr. Joseph Cools, a medical expert (T at 96-111), and Thomas Polsin, a vocational expert. (T at 123-31).

On September 12, 2012, the ALJ issued a second decision finding that Plaintiff was not disabled. (T at 17-42).   The ALJ's second decision became the Commissioner's final decision on January 30, 2014, when the Appeals Council denied Plaintiff's request for review. (T at 1-6).

On March 18, 2014, Plaintiff, acting by and through his counsel, timely commenced this action by filing a Complaint in the United States District Court for the Eastern District of Washington. (Docket No. 3). The Commissioner interposed an Answer on May 19, 2014. (Docket No. 10).

Plaintiff filed a motion for summary judgment on October 17, 2014. (Docket No. 13).  The Commissioner moved for summary judgment on November 26, 2014. (Docket No. 16).  Plaintiff filed a reply memorandum of law on December 16, 2014. (Docket No. 18).

For the reasons set forth below, the Commissioner's motion is granted, Plaintiff's motion is denied, and this case is closed.

DECISION AND ORDER – WINKEL v COLVIN 14-CV-00076-VEB

# III. DISCUSSION

## A.    Sequential Evaluation Process

The Social Security Act ("the Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a plaintiff shall be determined to be under a disability only if any impairments are of such severity that a plaintiff is not only unable to do previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if the person is engaged in substantial gainful activities. If so, benefits are denied. 20 C.F.R. §§ 404. 1520(a)(4)(i), 416.920(a)(4)(i). If not, the decision maker proceeds to step two, which determines whether plaintiff has a medially severe impairment or combination of impairments. 20 C.F.R. §§

5

404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, plaintiff is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents plaintiff from performing work which was performed in the past. If a plaintiff is able to perform previous work that plaintiff is deemed not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, plaintiff's residual functional capacity (RFC) is considered. If plaintiff cannot perform past relevant work, the fifth and final step in the process determines whether plaintiff is able to perform other work in the national economy in view of plaintiff's residual functional capacity, age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon plaintiff to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once plaintiff establishes that a mental or physical impairment prevents the performance of previous work. The burden then shifts, at step five, to the Commissioner to show that (1) plaintiff can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" that plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

## B.    Standard of Review

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold a Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983)(citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-02 (9th Cir. 1989).

Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebreeze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989)(quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the Commissioner, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

## C.   Commissioner's Decision

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2011, and had not engaged in substantial gainful activity since August 21, 2007, the alleged onset date. (T at 22). The ALJ determined that Plaintiff's cervical degenerative disc disease, carpal tunnel syndrome, depression, learning disorder, cannabis abuse, and mild cognitive disorder were "severe" impairments under the Act. (Tr. 22-25).

However, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments set forth in the Listings. (T at 26-27).  The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform a limited range of light work as defined in 20 CFR § 416.967 (b). The ALJ found that Plaintiff was limited to occasional lifting overhead with the right (dominant) upper extremity, occasional pushing/pulling the right upper extremity, no climbing of ladders/ropes/scaffolds, and occasional crawling. The ALJ determined that Plaintiff could not perform any job that required constant turning of the neck.  The ALJ found that Plaintiff could perform frequent (but not constant) gripping with his right hand, 1-3 step tasks, and no detailed work.  She concluded that Plaintiff was limited to occasional changes in

the work setting, occasional contact with the general public, and jobs that did not require more than elementary reading and spelling skills. (T at 27-34).

The ALJ found that Plaintiff could not perform his past relevant work as a landscape laborer, home attendant, cutoff saw operator, or lumber grader. (T at 34). However, considering Plaintiff's age (45 on the alleged onset date), education (high school), work experience, and RFC (limited light work), the ALJ determined that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T at 35-36).

As such, the ALJ concluded that Plaintiff had not been disabled, as defined under the Act, from August 21, 2007 (the alleged onset date), through September 13, 2012 (the date of the ALJ's decision) and was therefore not entitled to benefits. (Tr. 36). As noted above, the ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. (Tr. 1-6).

## D.    Plaintiff's Arguments

Plaintiff contends that the Commissioner's decision should be reversed. He offers two (2) principal arguments in support of this position. First, Plaintiff challenges the ALJ's credibility determination. Second, Plaintiff contends that the ALJ did not properly evaluate the medical evidence. This Court will address both arguments in turn.

## 1.      Credibility

A claimant's subjective complaints concerning his or her limitations are an important part of a disability claim. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004)(citation omitted). The ALJ's findings with regard to the claimant's credibility must be supported by specific cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Leste*r, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

In this case, Plaintiff testified as follows:

He left his last employment at Goodwill Industries due to pain resulting from standing for prolonged periods. (T at 60-61). He attempted to attend school, but struggled with concentration. (T at 64). He has difficulty sleeping. (T at 65). He has a criminal record, which includes domestic violence charges and DWI offenses. (T at 66). Spine and shoulder pain are serious, long-standing issues. (T at 67-68). Sitting, standing, and walking are all difficult. (T at 68-69). He tries to avoid overhead lifting. (T at 69). At the time of the first administrative hearing, Plaintiff

identified carpal tunnel in his right hand as an issue, with surgery a possibility. (T at 69-70, 73). He lives alone. (T at 70). He offsets some of his rental expense by shoveling snow, mowing lawns, and minor maintenance. (T at 71). He uses public transportation. (T at 72). He has limited hobbies and little social interaction. (T at 73). He has neck pain, which got worse following a March 2004 surgery. (T at 74). The neck pain limits his ability to turn his head. (T at 75). Right shoulder pain is an issue. (T at 75-76). He cannot sit for more than an hour. (T at 76). Standing is limited to 15-20 minutes. (T at 76). He avoids climbing stairs due to back pain. (T at 76). He has breathing problems. (T at 78).

At the second administrative hearing, Plaintiff testified that he had carpal tunnel surgery in January of 2011 and experienced some improvement. (T at 112). He has significant sleep difficulties. (T at 114). He spends most of his day watching television and visiting with neighbors. (T at 114). He has troubling using his right arm and experiences dizziness upon exertion. (T at 115). Severe migraines are an issue; he must lie down to get relief. (T at 115). This happens 3 to 4 times per day. (T at 116). His neck pain has been increasing and continues to limit his ability to turn his head. (T at 116-17). His right shoulder "pops and grinds." (T at 117). He can pick up 10 pounds, but cannot carry that amount. (T at 118). He needs help to

do shopping and laundry. (T at 118-19). He has depression symptoms, which have been somewhat improved with medication. (T at 122-23).

The ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that his statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely credible. (T at 29).

For the following reasons, this Court finds the ALJ's decision to discount Plaintiff's credibility supported by substantial evidence and consistent with applicable law.

No treating or examining physician identified any specific, significant work-related limitations arising from Plaintiff's back, neck, or wrist issues. Although Dr. Frank Otto, a treating physician, opined in August 2007 that Plaintiff could not perform sedentary work (T at 424-27), in April of 2008, he reported that Plaintiff was capable of light work. (T at 430-33). Dr. Otto's assessments were not supported by detailed clinical findings.

In June of 2008, David Jeter, a physical therapist, conducted a physical capacities evaluation and concluded that Plaintiff could perform "light to medium level work." (T at 450). In October of 2009, Dr. Charles Wolfe, a non-examining State Agency review consultant, opined that Plaintiff could occasionally lift/carry 20

DECISION AND ORDER – WINKEL v COLVIN 14-CV-00076-VEB

pounds, frequently lift/carry 10 pounds, stand/walk for about 6 hours in an 8-hour workday, and sit for about 6 hours in an 8-hour workday. (T at 575). Dr. Wolfe assessed some postural and manipulative limitations, consistent with the ALJ's RFC determination. (T at 575-77). Dr. Wolfe's findings were adopted by Dr. Howard Platter, another State Agency review consultant, in February of 2010. (T at 615).

As outlined by the ALJ, the treatment Plaintiff received for his neck, back, and wrist issues was conservative and the objective findings were generally mild. (T at 29). For example, Dr. William Weigel, an examining physician, noted that Plaintiff's grip strength and rotation of his wrists appeared "adequate," with no atrophy or spasticity. (T at 412-13). A May 2009 MRI found mild C4-C5 vertebral spondylosis without cord deformity, mild to moderate bilateral C4-C5 neural foraminal narrowing, mild left and moderate right C5-C6 neural foraminal narrowing (unchanged since a 2007 MRI), and mild right C6-C7 neural foraminal narrowing. (T at 504). In a December 2010 treatment note following carpal tunnel release surgery, Dr. Kurt Anderson described Plaintiff as experiencing "symptomatic relief" and "very pleased." (T at 737). The fact that Plaintiff received only conservative treatment for his impairments was a clear and convincing reason for

discounting his credibility. *See Johnson v. Shalala*, 60 F.3d 1428,1434 (9th Cir. 1995).[2]

The record also contains evidence sufficient to justify the ALJ's decision to discount Plaintiff's claims of disabling mental health impairments. Dr. Allen Bostwick, a psychologist, performed a consultative evaluation in May of 2009. Dr. Bostwick diagnosed cognitive disorder NOS (with generally mild neurobehavioral deficits), disorder of written expression (severe), pain disorder, cannabis dependence (in questionable early remission), alcohol dependence (in apparent partial to full remission), and polysubstance dependence (in long-term sustained remission). (T at 521). Dr. Bostwick assigned a Global Assessment of Functioning ("GAF") score[3] of 65 (T at 521), which is indicative of mild symptoms. *See Wright v. Astrue*, CV-09-164, 2010 U.S. Dist. LEXIS 53737, at *27 n. 7 (E.D. Wa. June 2, 2010). He assessed no social or interpersonal limitations with regard to a customer service-oriented occupation. (T at 522).

---

[2] The ALJ did not credit Plaintiff's allegations concerning his migraines. Plaintiff does not specifically challenge this aspect of the ALJ's conclusion or point to any evidence contradicting the ALJ's (implicit) conclusion that the migraines did not cause disabling limitations.

[3] "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." *Vargas v. Lambert*, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998).

DECISION AND ORDER – WINKEL v COLVIN 14-CV-00076-VEB

Dr. Joyce Everhart, an examining psychologist, completed a report in May of 2012, in which she diagnosed cognitive disorder (NOS), major depressive disorder, pain disorder, alcohol dependence (in sustained full remission), and personality disorder. (T at 787). She assigned a GAF of 55 (T at 788), which is indicative of moderate symptoms or difficulty in social, occupational or educational functioning. *Amy v. Astrue*, No. CV-11-319, 2013 U.S. Dist. LEXIS 2297, at *19 n.2 (E.D.Wa Jan. 7, 2013). Dr. Everhart assessed attention and concentration within normal limits and opined that Plaintiff had the ability to understand, remember, and follow simple directions. (T at 788). She opined that Plaintiff had moderate limitations with regard to his ability to make judgments on simple work-related decisions and understand and remember complex instructions. (T at 790). Dr. Everhart assessed mild limitations with respect to Plaintiff's ability to interact appropriately with the public, supervisors, and co-workers and moderate restriction with responding appropriately to usual work situations and changes in a routine work setting, (T at 791). The form completed by Dr. Everhart defined "moderate" as "more than a slight limitation . . ., but the individual is still able to function satisfactorily." (T at 790).

Dr. Joseph Cools, a clinical psychologist, reviewed the record and testified at the second administrative hearing as a medical expert. Dr. Cools opined that

Plaintiff had mild limitations as to his activities of daily living, moderate impairment

with regard to social functioning, and moderate impairment as to concentration,

persistence, and pace. (T at 108-109). Dr. Cools did not believe the suggestions of a

personality disorder were supported by the record. (T at 109-110). He noted that

Plaintiff was described as "gregarious and social" with friends he had know for a

long time and that he did not have any social barriers in terms of interacting with

others. (T at 110). The ALJ asked Dr. Cools whether Plaintiff should be limited to

only occasional public contact. Dr. Cools responded that it would "probably" be "a

little easier" for Plaintiff, but that it would not "make a whole lot of difference in his

ability to function." (T at 111).

    In November of 2009, Dr. James Bailey, a non-examining State Agency

review consultant, opined that Plaintiff could understand, remember, and carry out

non-complex work instructions and tasks in a position where employee goals were

clearly set; could interact with the public and co-workers; but would need to be

"shown some changes." (T at 584). Dr. Bailey assessed mild restriction in activities

of daily living, mild difficulties in maintaining social functioning, and moderate

difficulties in maintaining concentration, persistence, or pace. (T at 596). In January

of 2010, Dr. Jerry Gardner, another non-examining State Agency review consultant,

affirmed Dr. Bailey's conclusions. (T at 614). *See Henderson v. Astrue*, 634 F. Supp.

DECISION AND ORDER – WINKEL v COLVIN 14-CV-00076-VEB

2d 1182, 1190 (E.D.W.A. 2009)("The opinion of a non-examining physician may be accepted as substantial evidence if it is supported by other evidence in the record and is consistent with it.")(citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995)).

The opinions of Dr. Bostwick, Dr. Everhart, Dr. Bailey, Dr. Gardner, and Dr. Cools support the ALJ's decision to discount Plaintiff's claims regarding his mental health impairments. In addition, the ALJ also found Plaintiff's activities of daily living (which included preparing meals, shopping, using public transportation, making candles, playing cars, managing a savings account) inconsistent with his claims of disabling limitations. (T at 28). Plaintiff also testified that he offsets some of his rental expense by shoveling snow, mowing lawns, and performing minor maintenance jobs. (T at 71). Although the lack of supporting medical evidence cannot form the sole basis for discounting pain testimony, it is a factor the ALJ may consider when analyzing credibility. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). Subjective complaints contradicted by medical records and by daily activities may be discounted. *Carmickle v. Comm'r of Soc. Sec. Admin*., 533 F.3d 1155, 1161 (9th Cir. 2008); *Thomas v. Barnhart,* 278 F.3d 947, 958-59 (9th Cir. 2002).

Plaintiff complains that the ALJ improperly discounted his credibility because of "inconsistent" testimony concerning his marijuana use. In particular, Plaintiff

sometimes denied using marijuana to examiners, but then admitted daily marijuana use (allegedly for medicinal purposes) on other occasions. (T at 31). Plaintiff posits alternative explanations for these inconsistencies, citing a lack of insight on his part and varying patterns of drug use. However, to the extent there is conflicting evidence on this score (or to the extent reasonable people might read the same evidence differently), this Court may not substitute its judgment for that of the Commissioner. *See Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir. 1999)("[Q]uestions of credibility and resolutions of conflicts in the testimony are functions solely of the [Commissioner].").  In any event, even viewing the evidence of marijuana use in the light most favorable to Plaintiff (*i.e.* even assuming that the inconsistencies identified by the ALJ have an "innocent" explanation), there remains sufficient evidence (as detailed above) to sustain the Commissioner's decision to discount Plaintiff's credibility.

### 2.        Medical Evidence

Plaintiff also contends that the ALJ did not properly assess the various medical opinions. This Court finds the ALJ's consideration of the medical opinions consistent with applicable law and supported by substantial evidence.

In disability proceedings, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is

given more weight than that of a non-examining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester*, 81 F.3d at 830. If contradicted, the opinion can only be rejected for "specific" and "legitimate" reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

Historically, the courts have recognized conflicting medical evidence, and/or the absence of regular medical treatment during the alleged period of disability, and/or the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints of pain, as specific, legitimate reasons for disregarding a treating or examining physician's opinion. *Flaten v. Secretary of Health and Human Servs.*, 44 F.3d 1453, 1463-64 (9th Cir. 1995).

In September of 2009, Dr. W. Scott Mabee, an examining psychologist, completed a psychological evaluation.  He diagnosed pain disorder, depressive disorder (NOS), alcohol abuse (sustained partial remission), and personality disorder (NOS, with histrionic features). (T at 537).  He assigned a GAF score of 50 (T at 537), which is indicative of serious impairment in social, occupational or school functioning. *Onorato v. Astrue,* No. CV-11-0197, 2012 U.S. Dist. LEXIS 174777, at

*11 n.3 (E.D.Wa. Dec. 7, 2012). Dr. Mabee assessed marked limitation with regard to Plaintiff's ability to exercise judgment and make decisions, relate appropriately to co-workers and supervisors, and respond appropriately to and tolerate the pressures and expectations of a normal work setting. (T at 539).

Dr. John Arnold, an examining psychologist, completed a psychological/psychiatric evaluation in February of 2011. He diagnosed pain disorder and personality disorder with histrionic features. (T at 807). Dr. Arnold assigned a GAF score of 53 (T at 807), which is indicative of moderate symptoms or difficulty in social, occupational or educational functioning. *Amy v. Astrue*, No. CV-11-319, 2013 U.S. Dist. LEXIS 2297, at *19 n.2 (E.D.Wa Jan. 7, 2013). He assessed marked limitation with regard to Plaintiff's ability to communicate and perform effectively in a setting with public contact, but found no limitation with regard to understanding/remembering/persisting in simple instructions and mild limitations as to learning new tasks and performing routine tasks without undue supervision. (T at 808).

The ALJ recognized that there were conflicting opinions concerning Plaintiff's mental health impairments and, in particular, with regard to Plaintiff's ability to interact with others. (T at 30-31). The ALJ asked Dr. Cools to address this inconsistency. Dr. Cools noted that Plaintiff was described as "gregarious and

social" with friends he had know for a long time and that he did not have any social barriers in terms of interacting with others. (T at 110).  The ALJ accepted Dr. Cools's conclusion, which was consistent with the opinions provided by Dr. Bostwick, who assessed no social or interpersonal limitations with regard to a customer service-oriented occupation, (T at 522); Dr. Everhart, who found mild limitations with regard to Plaintiff's ability to interact appropriately with the public, supervisors, and co-workers, (T at 791); and the State Agency review consultants (Dr. Bailey and Dr. Gardner), who assessed mild difficulties in maintaining social functioning. (T at 596, 614).

It is the role of the Commissioner, not this Court, to resolve conflicts in evidence. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *Richardson*, 402 U.S. at 400.  If the evidence supports more than one rational interpretation, this Court may not substitute its judgment for that of the Commissioner. *Allen v. Heckler*, 749 F.2d 577, 579 (9th 1984). If there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the Commissioner's finding is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Here, the ALJ's finding was supported by substantial evidence and should be sustained.  *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)(holding that if evidence reasonably supports the

Commissioner's decision, the reviewing court must uphold the decision and may not substitute its own judgment).

Plaintiff also points to a handwritten note dated October 28, 2011, in which Dr. Lylanya Cox, a treating physician, indicated that "with the current information I have, [Plaintiff] is not able to work," (T at 758). The ALJ discounted this opinion. (T at 33). This Court finds no error in the ALJ's decision.

First, Dr. Cox's handwritten note was brief and conclusory; it contained no detailed findings or explanation for her opinion. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1044-45 (9th Cir. 2007) (citing *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002)(noting that the ALJ is not obliged to accept a treating source opinion that is "brief, conclusory and inadequately supported by clinical findings").

Second, the opinion appears to have been based largely on Plaintiff's subjective complaints, which the ALJ discounted for the reasons outlined above. It is reasonable for an ALJ to discount a physician's opinion predicated on subjective complaints found to be less than credible. *Bray v. Comm'r of Soc. Sec.*, 554 F.3d 1219, 1228 (9th Cir. 2009).

Lastly, Dr. Cox's was contracted by other evidence of record, including the clinical and objective findings (T at 29-30), the conservative course of treatment, the

April 2008 assessment of Dr. Otto (T at 430-33), and the opinion of Dr. Wolfe (T at 575), which was affirmed by Dr. Platter (T at 615).

## IV. CONCLUSION

After carefully reviewing the administrative record, this Court finds substantial evidence supports the Commissioner's decision, including the objective medical evidence and supported medical opinions. It is clear that the ALJ thoroughly examined the record, afforded appropriate weight to the medical evidence, including the assessments of the examining medical providers and the non-examining consultants, and afforded the subjective claims of symptoms and limitations an appropriate weight when rendering a decision that Plaintiff is not disabled. This Court finds no reversible error and because substantial evidence supports the Commissioner's decision, the Commissioner is GRANTED summary judgment and that Plaintiff's motion for judgment summary judgment is DENIED.

DECISION AND ORDER – WINKEL v COLVIN 14-CV-00076-VEB

# V. ORDERS

IT IS THEREFORE ORDERED that:

Plaintiff's motion for summary judgment, Docket No. 13, is DENIED.

The Commissioner's motion for summary judgment, Docket No. 16, is GRANTED.

The District Court Executive is directed to file this Order, provide copies to counsel, enter judgment in favor of the Commissioner, and close this case.

DATED this 13th day of January, 2015.


/s/Victor E. Bianchini
VICTOR E. BIANCHINI
UNITED STATES MAGISTRATE JUDGE

DECISION AND ORDER – WINKEL v COLVIN 14-CV-00076-VEB